Plea of nil debent to action brought on a judgment obtained in a state court of another state, inadmissible.

[Cited in Banks v. Greenleaf, Case No. 959; Jacquette·v. Hugumon, Id. 7,169; Taylor v. Carpenter. Id. 13,785; Burnham v. Webster, Id. 2,179.]

At law. A judgment having been obtained in the supreme court of the state of New Jersey, an action of debt was brought upon it here; and the defendants pleaded nil debent.

But Bradford contended, that, consistently with the federal constitution, (article 4, § 1,) and the act of congress of 26th May, 1790, (1 Swift's Ed. p. 115,) the plea was inadmissible. The constitution declares that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." And the act provides, that those records and judicial proceedings, being authenticated in the mode prescribed, "shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state, from whence the said records are, or shall be taken." It is a general principle, that a debt cannot be denied, without denying the instrument on which it is founded; and the only question left open, by the act of congress, is—whether the courts of New-Jersey would sustain any other plea than nul tiel record, if the present action had been brought there.

Ingersoll declined arguing the point for the defendant, thinking it clearly against him.

WILSON, Circuit Justice. There can be no difficulty in this case. If the plea would be bad in the courts of New-Jersey, it is bad here: for, whatever doubts there might be on the words of the constitution the act of congress effectually removes them; declaring in direct terms, that the record shall have the same effect in this court, as in the court from which it was taken. In the courts of New-Jersey no such plea would be sustained; and, therefore, it is inadmissible in any court sitting in Pennsylvania.

Bradford then proposed settling the interest; but WILSON, Justice, observed, that he had had more than one occasion to object to the court's interposing, in any form, to assess damages. In some states, he said, it had, indeed, grown into a practice; and the courts had in that, and, perhaps, in many other instances, done the business

which ought to go to a jury. Lewis referred to a case in the supreme court of the United States, in which this point had been made, tho' not directly, decided: but the judge said, it was not the foundation of the judgment, of the court, and that, in his opinion, a writ of enquiry was the regular mode of proceeding.

It being suggested, however, that the usage in the state courts was to enter the judgment generally; and that the plaintiff must ascertain the debt, and issue execution at his own peril; that mode was adopted on the present occasion. Judgment for the plaintiff.

ARMSTRONG, (DAVIS v.)    See Case No. 3,-624.

## Case No. 544.

### ARMSTRONG v. HANLENBECK et al.

[3 N. Y. Leg. Obs. 43.]

Circuit Court, S. D. New York.    Feb. 29, 1844.

#### PATENT RIGHT—ASSIGNMENT—AGREEMENT—INJUNCTION.

1. A., being the patentee of a machine for cleaning and polishing knives, entered into an agreement with H. whereby he assigned and released to the latter all his right, &c., to the patent, so far as the exclusive right of manufacturing and vending the machine should extend for a term of years, in consideration of a weekly payment of $10 for such privilege. The agreement contained a proviso as follows: "It is further provided and agreed that, if the weekly payments aforesaid shall remain due and unpaid for four successive weeks, that then it shall be at the option of the said party of the first part, (A.) (upon showing proof of his having demanded payment thereof,) to claim and take back the interest in the said letters patent," &c. On the 4th January, a demand was made of H. for $100 weekly arrears since October preceding, and the next day a suit was instituted by A. against H., upon which H. appeared on the 8th January, and confessed a judgment for a $100 for arrears due from 15th October to December 25th. 1843. A. subsequently served a notice on H., claiming to exercise the option of taking back the interest in the letters patent conformably to the terms of the agreement. H., however, disregarded the notice. and continued to manufacture and vend the machines. On a bill filed for an account and general relief: Held, that the confession of judgment by H. at the suit of A. amounted to an admission by H., that the weekly payments were in arrear, and that legal demand of payment had been made,—that consequently the proceedings of H. since the 8th January were not justified by the agreement, but were in violation of the complainant's right.

2. Held, also, that the agreement conveyed no interest in the patent right, but amounted to a mere licence, with a limitation or condition at its continuance.

3. Held, also, that the institution of proceedings by A. to recover the arrears due, did not thereby affirm the licence, and that the doctrine in respect to forfeiture of leases in cases of re-entry and distress for arrears of rent, had no application to such an interest as that assigned.

[In equity. Bill for injunction to restrain further infringement of patent No. 2,435, granted to M. N. Armstrong, January 24, 1842. Injunction ordered.]

John Cook, for complainant.
A. Crist, for defendant.

BETTS, District Judge. The bill prays an injunction and account, and general relief in respect to the violation of a patent right granted the complainant.

The essential facts upon which the suit is founded are, that under letters patent issued January 4, 1842, to the complainant, he became proprietor of the right to a machine for cleaning and polishing cutlery, and that by an agreement in writing entered into between him and the defendant Hanlenbeck, on the 17th of March, 1843, he assigned and released to the latter, all his right, title and interest in those letters patent, as far only as the exclusive right of manufacturing and vending the said machine shall extend, for the term of seven years from the 5th of April, 1842, on the consideration of a weekly payment of $10 for such privilege, with the right to the assignee at any time during that term to terminate the agreement by re-assigning his interest to the grantor. Neither party was "to have the power to sell or use the patent right or any part, right, title or interest thereof, without the written consent of the parties." The agreement concluded with this stipulation, "It is further provided and agreed between the said parties, that if the weekly payment aforesaid shall remain due and unpaid for four successive weeks, that then it shall be at the option of the said party of the first part, (upon showing proof of having legally demanded payment thereof,) to claim and take back the interest in the said letters patent, hereby conveyed to the said party of the second part, and to have and to hold the same as fully and entirely as if the same had been re-assigned to him by the said party of the second part."

On the 4th of January demand was made of the defendant Hanlenbeck for payment of $100 weekly arrears since October 16th preceding, and the next day, suit was brought therefor on summons in the marine court, returnable the 8th day January. On the latter day the defendant appeared and confessed judgment on the demand to $100 for arrears from October 16th to December 25th, 1843. On the same day the complaint served a written notice on the defendant Hanlenbeck, that he exercised the option secured him by the agreement, and took back the interest, &c., conveyed by it, "because the stipulated weekly payments have been and are in arrear and unpaid for more than four successive weeks, and payment thereof has been legally demanded." The bill charges that the defendants since the 8th of January last have continued to manufacture and vend the machines, and now have them on hand and in process of manufacture. The bill is opposed upon two general grounds. 1. That the defendant always tendered the weekly payments within the times limited, but the complainant refused to receive them, and that accordingly there was no default. 2. That the complainant cannot enforce the forfeiture of the grant for any default antecedent to the 8th of January, because he then took a judgment at law for the amount in arrear, and the suit and judgment were a waiver in law of the forfeiture if any had occurred.

Depositions of several witnesses are referred to in the written arguments as supporting the allegations of tender, but no such depositions are submitted with the papers, and none are on file in the clerk's office. Accordingly the fact must be determined by the statements of the bill. The bill admits various propositions to pay the weekly arrears, but asserts they were never made by the defendant, and that a receipt to him therefor was offered by the complainant and refused by those proposing the payments, the complainant then supposing and now alleging that the purpose was to lead him to recognize other parties than Hanlenbeck as possessing the right in question, which he refused to do. It is, however, unnecessary to weigh the effects of those offers, because by confessing judgment to $100 the defendant admits the weekly payments in arrear for ten weeks prior to the 25th of December, and he cannot now be allowed to go behind that judgment, and prove there was no default of payment. The judgment must be regarded as establishing the fact, that default was made by defendant for more than four successive weeks, and that legal demand of payment was made.

The second point has been urged with great strenuousness, and it is supposed the doctrine in respect to the forfeiture of leases applied in cases of re-entry and distress for rent, governs this case. On that subject the law is claimed to be that a forfeiture accruing upon a clause of re-entry in a lease is waived, if the landlord distrain for rent, or subsequently does any act amounting to a recognition of the lease as existing and in force. The supreme court of this state seems to consider the established rule of common law to be that distraining for rent after condition broken deprives the landlord of the right of re-entry, under a re-entry clause in his lease. [Jackson v. Sheldon.] 5 Cow. 454. If this be a true interpretation of the rule, it is certainly one turning on a very narrow point. The same case however conceded that the landlord may have a right of action on the contract to pay rent, and also enforce the forfeiture of the lease by re-entry. [Jackson v. Sheldon.] 5 Cow. 457; [Walker's Case.] 3 Coke, 64. But although the relation of landlord and tenant has some similitude to that of these parties, it is by no means identical with it, and ought not therefore to be resorted to as supplying the law of the case. It is to be observed that the agreement between these parties conveyed no interest in the patent right.

The defendant has accordingly no assignment or letting of the estate of the complainant. He could protect the privilege granted him only as against the complainant, he had not such an interest as would enable him to maintain actions against third persons for a violation of the patent right. The grant accordingly amounted to a mere license with a limitation or condition as to its continuance.

The doctrine of forfeiture in its strict sense would not be applicable to an interest of that character—no estate being imparted, and it being no more than a covenant letting to hire, a method or discovery of the complainant, upon a condition of recall or revocation on the omission by the defendant to pay the stipulated hire therefor. Upon the bill, I think it clear that the defendant has failed to fulfill the condition on the performance of which alone his right to use the privilege given him was to continue. And that accordingly upon the fact of his default, and the notice from the complainant that he has therefor exercised his option to terminate the agreement, his license to manufacture and vend the machine ceased on the 8th of January last. The motion that bringing an action to recover the arrears due for the use of the privilege, was a re-affirmance of the license, abrogates one main feature of the contract, for the agreement was absolute to pay the stipulated hire, and also that the right should cease if that part of the contract was not fulfilled: it would accordingly be incongruous to hold that the complainant could not terminate the license without losing his remedy for past dues, or prosecute for those without re-asserting the continuance of the privilege.

In my opinion, the claimant could resort to either or both remedies, and his action for the debt being in no way incompatible with his resumption of the privilege under the contract, I hold that the proceedings of the defendant since the 8th of January are not protected or justified by the agreement, and are in violation of the complainant's patent right. Upon the case as it stands, the defendants are found manufacturing and vending the patented machines without any subsisting authority or license from the patentee, and the injunction prayed for must accordingly issue. Injunction ordered.